UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA EVA MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>TULARE COUNTY, SAN DIEGO COUNTY, and DOES 1-100,<br><br>    Defendants. | No. 1:16-cv-01140-DAD-SKO<br><br><u>ORDER DENYING DEFENDANT SAN DIEGO COUNTY'S MOTION TO DISMISS</u><br><br>(Doc. No. 7) |

Plaintiff Maria Eva Martinez filed this action on August 3, 2016 alleging: (1) violations of the Fourth and Fourteenth Amendments against the Tulare County defendants; (2) interference with a constitutionally protected right in violation of California Civil Code § 52.1 against the Tulare County defendants; (3) false arrest and imprisonment against all defendants; (4) negligence against all defendants; and (5) negligent infliction of emotional distress against all defendants.  (Doc. No. 1.)  On August 26, 2016, defendant County of San Diego moved to dismiss the claims against it, arguing that plaintiff's complaint failed to state claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 7.)  On September 22, 2016, plaintiff filed her opposition to the motion to dismiss.  (Doc. No. 11.)  On September 30, 2016, the County of San Diego filed a reply.  (Doc. No. 15.)  On October 6, 2016, the court heard oral arguments.  At that hearing, attorney Caitlin Blythe appeared telephonically

1

on behalf of plaintiff and Senior Deputy County Counsel Ricky Sanchez appeared telephonically on behalf of the defendant County of San Diego. After hearing oral argument the court took the motion under submission for decision. For the reasons that follow, the County of San Diego's motion to dismiss will be denied.

### FACTUAL ALLEGATIONS

In her complaint plaintiff alleges the following. On Friday, September 4, 2015, plaintiff Maria Eva Martinez, as a passenger in her co-worker's car, attempted to enter the United States at the Otay border crossing. (Doc. No. 1 at 5.) Martinez provided an INS border agent with her California driver's license and United States passport and was detained based upon an arrest warrant issued at the request of the Tulare County Sherriff's Department and District Attorney's Office. (*Id*.) The warrant had been issued for a Maria Eva Gonzalez, a.k.a. Maria Eva Martinez, from Bakersfield, California, for the theft of a wallet in Tulare County. (*Id*.)

The border agents handcuffed Martinez and referred to her as "Maria Gonzalez" even though she explained to them that her name was Maria Eva Martinez as both her driver's license and passport confirmed. (*Id*.) Moreover, plaintiff has never lived in Bakersfield. (*Id*.) Nonetheless, the agents performed a pat-down search, took her into custody and fingerprinted and photographed her. (*Id*.) Two San Diego Sherriff's Deputies then arrived at the INS border station to transport Martinez and another male detainee to the San Diego County Jail. (*Id*.) The Sherriff Deputies handcuffed Ms. Martinez and placed her in the rear seat of their patrol car, next to a male detainee who had been spitting on INS agents and had a mask over his face. (*Id*. at 5–6.) While in the patrol car, the shoulder straps of Ms. Martinez's clothing fell off of her shoulders exposing most of her upper breasts. (*Id*. at 6.) Because she was handcuffed, Ms. Martinez could not pull her shoulder straps up to cover her breasts. (*Id*.) She also noticed that the male prisoner was able to remove his mask. (*Id*.) After the patrol car arrived at the San Diego Men's jail, Ms. Martinez was kept handcuffed in the back of the car for two hours while the male detainee was booked. (*Id*.)

The San Diego Sherriff's Deputies then booked Martinez into the San Diego County Women's jail. (*Id*.) She was again fingerprinted there. (*Id*.) The contents of her purse were

1  inventoried and she was forced to throw away a small pocket knife, which her son had given her
2  fifteen years earlier.  (*Id*.)  She was subjected to additional invasive body searches in front of
3  male officers, handcuffed, and placed in a prison cell.  (*Id*.)  With every officer she encountered,
4  Ms. Martinez repeatedly told them she was innocent and that she was not the person they were
5  looking for pursuant to the arrest warrant.  (*Id*.)

6         The prison cell Ms. Martinez was placed in included only a metal slab for a bed and had
7  what appeared to her to be vomit on the walls.  (*Id*.)  The cell was freezing cold and there were no
8  blankets or pillows.  (*Id*.)  Ms. Martinez was then transferred to another cell that had walls
9  covered in what appeared to be feces, blood, and vomit.  (*Id*. at 7.)  During her cell transfer,
10 Martinez again protested her innocence, and asked to speak with a jail supervisor.  (*Id*.)  Martinez
11 told the supervisor that she had committed no crime and she was not the person subject to the
12 arrest warrant.  (*Id*.)  She asked the supervisor to call Tulare County officials to verify that she
13 was not the person subject to the arrest warrant.  (*Id*.)  The supervisor refused and Martinez
14 remained in the "cold, filthy" cell.  (*Id*.)

15        The following day, September 5, 2015, Martinez posted bail.  (*Id*.)  Once finally released,
16 she recovered her cell phone and was able to call her co-workers to come get her.  (*Id*.)  Because
17 she had only been allowed to make local calls, Ms. Martinez had not been able to call anyone she
18 knew while in custody.  (*Id*.)  As a result of her arrest, filming for a film project Ms. Martinez
19 was working on was disrupted and her professional reputation in the Spanish language film and
20 television industry was damaged.  (*Id*.)

21        The Tulare County Sheriff's Department and District Attorney's Office had photographs
22 of Maria Eva Gonzalez, the actual suspect for whom the warrant had been issued, a surveillance
23 video showing her pick up a wallet, and a description identifying her as 170 pounds, five feet six
24 inches tall, and with black eyes.  (*Id*. at 2, 8-10.)  Following Ms. Martinez's release from custody,
25 her husband contacted the Tulare County District Attorney's office.  (*Id*. at 10.)  A Tulare County
26 Deputy District Attorney compared plaintiff Martinez's DMV records and driver's license
27 photograph to the photographs of the actual suspect, Maria Gonzalez, and acknowledged that
28 Martinez's appearance did not match that of the actual suspect.  (*Id*.)  Ms. Martinez is nearly fifty

pounds thinner and is taller than the true suspect and, unlike Maria Gonzalez, has brown, not black, eyes. (*Id*. at 3.) Moreover, Martinez resides in Orange, California, has never lived in Bakersfield, and, as of September 2015, had never even been to Tulare County. (*Id*.) On September 15, 2015, the Porterville County Court dismissed the complaint against Ms. Martinez after she was required to appear in court. (*Id*. at 10.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove

facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**ANALYSIS**

Defendant County of San Diego moves to dismiss the false arrest and imprisonment, negligence, and negligent infliction of emotional distress claims brought against it by plaintiff. (Doc. No. 7-1.) Each of these claims is discussed in turn below.

*A. False Imprisonment Claim*

Defendant County of San Diego argues that plaintiff has failed to state a cognizable false imprisonment claim against it because she was merely received by the two San Diego Sheriff Deputies for the purpose of transporting her to the San Diego County Jail and was not arrested by those deputies. (Doc. No. 7-1 at 4.) Defendants note that under California Penal Code § 142(a) it is a misdemeanor crime punishable by a fine or imprisonment for a peace officer to refuse to receive or arrest a person charged with a criminal offense. (*Id.*)

However, these arguments as a basis for dismissal fail because a cognizable false imprisonment claim can be grounded not only upon a false arrest but also upon a prolonged detention as well. *See Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379-80 (9th Cir. 1998). In this regard, false imprisonment is the "unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997). False arrest is not a different tort; it is merely "one way of committing a false imprisonment." *Collins v. City & County of San Francisco*, 50 Cal. App. 3d 671, 673 (1975). A second way of committing a false imprisonment is through an unlawful prolonged detention. *Martinez*, 141 F.3d at 1379-80. A jailer, and derivatively the public entity which employs the jailer, may be liable if the jailer knows that the

5

imprisonment is unlawful or if there is "some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710, 719 (1974).

Here, plaintiff has alleged sufficient facts in her complaint in support of a claim that the San Diego County Sheriff's Deputies and a supervisor at the San Diego County Women's Jail were made aware of sufficient information placing them under a duty to investigate the validity of plaintiff's incarceration. Apparently, the basis for Ms. Martinez's arrest was that her name matched not the name of a suspect, but an alias purportedly used by that suspect for whom an arrest warrant had been issued. However, plaintiff alleges in her complaint that both her United States passport and California driver's license plainly indicated to the deputies that Maria Eva Martinez is her true name and not an alias. Plaintiff's passport further indicated that she lived in a different city than that listed on the warrant as the residence of the actual suspect.

According to the allegations of her complaint, the San Diego County Sheriff's Deputies had access to plaintiff's passport and driver's license. Moreover, plaintiff alleges that with every officer she encountered in San Diego County, she repeatedly informed than that she was innocent and was not the person named in the arrest warrant. She also alleges that she told a supervisor at the San Diego County Women's jail that she had committed no crime and she was not the person subject to the warrant. Finally, plaintiff alleges that she even asked the jail supervisor to call Tulare County law enforcement officials to verify that she was not the person subject to the arrest warrant, but that the jail supervisor refused to do so. After plaintiff posted bail, her husband confirmed with the Tulare County District Attorney's office that she, in fact, was not the suspect. Accordingly, plaintiff has alleged sufficient facts to support a reasonable inference that the San Diego Sheriff's Deputies and the supervisor at the San Diego County Women's jail were provided reasonable notice requiring some investigation on their part into the validity of plaintiff's incarceration.

In their reply, defendant County of San Diego argues that since plaintiff was arrested on September 4, 2015 and released the next day, no duty to her was breached. In this regard, defendant contends the decision in *Baker v. McCollan*, 443 U.S. 137 (1979) establishes a standard

under which officials have three days to investigate claims of innocence. (Doc. No. 15 at 3.) In *Baker*, however, the Supreme Court was addressing a due process claim brought under the United States Constitution and specifically noted that "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. . . . false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Baker*, 443 U.S. at 146. Indeed, the Court observed that "[g]iven the requirements that an arrest be made only on probable cause and that one detained be accorded a speedy trial, a sheriff executing a valid arrest warrant is not required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official maintaining custody of the person named in the warrant required by the Constitution to perform an error-free investigation of such a claim." *Id*. at 138. The Court concluded in *Baker* that "[w]hatever claim this situation might give rise to under state tort law, it gives rise to no claim under the Fourteenth Amendment to the United States Constitution." *Id*. at 137.

California tort law, however, is clear that a "jailer has long been held liable for false imprisonment if he knew or should have known of the illegality of the imprisonment." *Sullivan*, 12 Cal.3d at 717–18. "The test requires either that the sheriff have actual knowledge that the imprisonment of the plaintiff is unlawful or alternatively that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." *Id*. at 719; *see also Lopez v. City of Oxnard*, 207 Cal. App. 3d 1, 7 (1989) ("A police officer must use reasonable prudence and diligence to determine whether a party being arrested is the one described in the warrant. The officer may not refuse to act upon information offered him which discloses the warrant is being served on the wrong person.") Here, plaintiff has alleged sufficient facts to support the inference that the San Diego Sheriff's Deputies and the supervisor at the San Diego County Women's jail were on notice, as reasonable people, to investigate the validity of her incarceration pursuant to an arrest warrant for Maria Gonzalez. Yet, plaintiff alleges, they made no effort to confirm whether plaintiff was the suspect, of a different name, for whom the
/////

arrest warrant had been issued.[1]

Accordingly, the court concludes plaintiff has alleged a cognizable false imprisonment claim against defendant County of San Diego.

### B. *Negligence Claim*

Defendant County of San Diego next argues that under California Government Code § 815.2(a), it cannot be vicariously liable for the conduct of Tulare County law enforcement officials in having the arrest warrant in question issued. (Doc. No. 7-1 at 4–5.) However, the negligence claim brought by plaintiff against the County of San Diego is clearly not based on the alleged conduct of Tulare County officials, but rather on the alleged failure of its own employees to perform their duty of investigating whether plaintiff Maria Eva Martinez was the subject of the arrest warrant for a suspect named Maria Gonzalez under the circumstances presented to them. (*See* Doc. No. 11 at 12.) A jailer has the duty to investigate the validity of an incarceration after being provided sufficient notice calling the validity of the incarceration into question. *Sullivan*, 12 Cal.3d at 719. This is similar to the duty that gives rise to plaintiff's false imprisonment claim grounded on her prolonged detention. *See Martinez*, 141 F.3d at 1381. Accordingly, the same allegations that support a cognizable false imprisonment claim are sufficient to support a cognizable negligence claim by plaintiff against defendant County of San Diego.

Defendant County of San Diego also moves to dismiss plaintiff's negligence claim to the extent it is based upon a theory of negligent hiring, training, and supervision. (Doc. No. 7-1 at 6.) Defendant argues that there is no statutory basis for such liability to be imposed against it. (*Id.*)

Public entities in California are immune from direct common law claims of negligence under the California Tort Claims Act, California Government Code § 815(a), unless there is a statutory basis for such a negligence claim. *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1179-80 (2003). However, the California Supreme Court has held, for instance,

---

[1] As noted above, no such effort was apparently made here despite the fact that plaintiff's passport and driver's license reflected a name other than that of the subject of the arrest warrant. Moreover, it is alleged that, as it turns out, Tulare County law enforcement officials had photographs, video, and a physical description of the actual suspect whose true name was not the same as plaintiff's.

that a public school district can be vicariously liable under California Government Code § 815.2 for the negligence of supervisors who allegedly fail to "properly hire, train and supervise" a school employees because of the "special relationship" arising from "the mandatory character of school attendance and the comprehensive control of students exercised by school personnel." *C.A. v. William S. Hart Union High School Dist.*, 53 Cal.4th 861, 868-79 (2012).  This "special relationship" gives rise to a duty of care to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally.  *Id*. at 870.

Likewise, there is a "special relationship" between one jailed and her jailers that creates a similar duty of care.  *Giraldo v. California Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250–51 (2008) (holding that there is a "special relationship" between a jailer and a prisoner due to the vulnerability and dependence of prisoners giving rise to a duty of care on the part of jailers to protect the prisoner from foreseeable harm inflicted by a third party); *see also Lum v. Cty. of San Joaquin*, 756 F. Supp. 2d 1243, 1254–55 (E.D. Cal. 2010) (concluding that a "special relationship" exists between arresting officers and arrestees).  Accordingly, a cognizable negligence claim has also been stated by plaintiff against the County of San Diego based upon a theory of negligent hiring, training, and supervision.

Finally, defendant County of San Diego argues that the immunity offered under California Government Code § 844.6(a)(2) protects it from liability.  (Doc. No. 7-1 at 7.)  However, neither the immunity afforded by§ 844.6(a)(2), nor that provided by any other  governmental immunity provision, protects the county from a false imprisonment claim brought pursuant to California Government Code § 815.6.  *See Sullivan*, 12 Cal.3d at 722 ("no provision for governmental immunity protects the county in an action for false imprisonment"); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1071–72 (9th Cir. 2009).  Since plaintiff's negligence claim is "based on" and "derivative of" her state false imprisonment claim, California's statutory immunities do not apply.  *See Cousins*, 568 F.3d at 1072 ("To the extent Cousins' negligence and negligent infliction of emotional distress claims are 'based . . . on the same facts,' 'are derivative of,' and are 'related' to his false imprisonment claim, both *Martinez* and *Asgari* require that we reverse their dismissal as to the AG because California's statutory immunities do not apply.).

1  Accordingly, defendant's motion to dismiss plaintiff's negligence claim will be denied.

2  ### C. *Negligent Infliction of Emotional Distress Claim*

3  Plaintiff's claim for negligent infliction of emotional distress is also derivative of her false
4  imprisonment claim. *See Martinez*, 141 F.3d at 1381–82 ("Martinez's claims for intentional and
5  negligent infliction of emotional distress, and his wife's claim for loss of consortium, are
6  derivative of the false arrest and false imprisonment claims.  Because the false imprisonment
7  claim grounded on prolonged detention survives summary judgment, these claims survive as
8  well.")  Because plaintiff has stated a cognizable false imprisonment claim, defendant's motion to
9  dismiss her derivative negligent infliction of emotional distress claim will also be denied.

10  **CONCLUSION**

11  For all the reasons discussed above,

12  1) Defendant County of San Diego's motion to dismiss (Doc. No. 7) is denied;

13  2) The matter is referred back to the assigned magistrate judge for purposes of
14  conducting a conference and issuing a scheduling order.

15  IT IS SO ORDERED.

16  Dated:   **November 14, 2016**

17  UNITED STATES DISTRICT JUDGE